NOLAN *v.* EASLEY.

May 5, 1952.

No. 38385 (58 So. (2d) 491)

Frank A. Critz & B. H. Loving, for appellants.

Paul M. Moore and W. J. Evans, for appellees.

**Hall, J.**

Mrs. Nancie Thomas, an elderly widow, approximately ninety years of age, died on September 18, 1947, leaving a holographic will, which was thereafter duly admitted to probate. The three parties to whom the will was addressed declined to serve for the limited compensation

therein stipulated, and J. B. Easley was appointed administrator C. T. A.

Mrs. Thomas' husband predeceased her by several years. They had only one child,—a son who was never married and who also predeceased his mother. The only heirs of Mrs. Thomas were therefore collateral kindred. Mr. and Mrs. Thomas and the son were all buried on one lot in a country cemetery in Calhoun County.

The following is a copy of the will as it appears in the record:

"My Will July 23, 1947

To Munro Brasher and Dud Davis and Ruble James if anything happens to me in Death

I want them to see after my things that I leave.

I want one thousand Dollars 1000—used around our Graves—if that much is left—

Give each 25 Dollars a piece for taking care of th—is Business

What is in the house sell it for what you can get Lawrence and Edell has a plenty.

Give Pernicia Colums 25 Dollars.

Get that money out of the Bank of Bruce. If Ellie wants to buy the place give him first chance if I should die soon.

Sell cows chickens and pig.

Use it on our Graves.

Hiar some on to keep those Graves up

Pay all expincies out of my Estate.

There is nothing againce this place

If you halft to have a Lawyer. Dont get Abb Paterson. Get Stone.

Nancie Thomas

Put concrete then place the steel wire.

Hire this work dun pay out of my money all expences."

Twenty-two of the heirs of Mrs. Thomas brought this suit against her remaining nine heirs and the administra-

tor and alleged that in said will she made no disposition of 141 acres of land belonging to her; they further alleged that said land was incapable of division in kind among the heirs and prayed that the same be sold for a division of the proceeds. They further alleged that by said will no disposition was made of the personal estate and they sought a construction of the will to this effect and prayed that the personal estate be divided among the heirs, after payment of debts, in accordance with their respective interests. No question was raised as to the testamentary capacity of Mrs. Thomas. The chancellor denied the relief sought and dismissed the bill, from which action this appeal is prosecuted.

The will as above set out is copied from the record and the original is not before us. The chancellor had the original before him and found as a fact that it contains no punctuation. This finding is not questioned, and the entire argument of appellants, and the only question in the case, turns upon an interpretation and construction of the will. In this connection we should bear in mind that ██ a will should be so construed as to avoid partial intestacy if by any reasonable construction this can be done; moreover, effect should be given to each provision of the will in determining the testatrix' intention, as ascertained from the language employed, even though it may be necessary to disregard grammatical mistakes in writing, improper use of capital letters, and mistakes in punctuation. Richmond v. Bass, 202 Miss. 386, 32 So. 2d 136, and numerous authorities therein cited.

With these principles as the basis for our consideration we can do no better than to adopt the reasoning of the learned chancellor. The instrument is directed to Munro Brasher, Dud Davis and Ruble James who are directed to see after the things that are left by the testatrix and for their services they are to receive $25 each. They declined to serve as executors but that fact could not defeat the intention of the testatrix in the disposition of her property.

Mrs. Thomas wanted "$1,000.00 used around our graves if that much is left." When this will was made she was in poor health and was being looked after by her neighbors. She had some property and money but did not know how much of her estate would be exhausted in discharging the expenses of her last illness and burial. She was devoted to her husband and son and was very solicitous about the care of their graves. If there was as much as $1,000 left she wanted that much spent on their graves along with her own. After conversion of the personal estate into cash and after payment of debts there was a balance on hand of $2,463.52, which does not include the land. While no specific directions were given as to how the money should be spent on the graves, the chancellor directed that the administrator should spend that amount, or approximately that amount, in improving the burial lot. In this we think he was correct. It was not necesary that the will should set out detailed specifications as to exactly what improvements should be made.

The property in the house, as well as the cows, chickens and pig were sold by the administrator and the proceeds placed in the administrator's account. Also, the money in the Bank of Bruce was placed in the administrator's account. All this was in accordance with the directions in the will.

The sum of $25 was devised to Pernicia Colums and the chancellor ordered payment of this bequest. There is no question as to this item.

The chancellor held, and we think correctly so, that Mrs. Thomas desired that the land be sold and that Ellic (Chrestman) be given the first opportunity to purchase it, provided, of course, that he would offer as much as any other bidder, and the decree directed the administrator to petition for a sale of the land upon hearing of which petition the chancellor would fix the mode and manner of sale.

The chancellor further held that the dominant purpose and intent of the testatrix was that the graves

and cemetery lot be kept up, and that someone be hired from time to time to do this and that the expenses therefor be paid out of her estate, which includes not only the personal estate but also the real estate. In our opinion this is a correct interpretation of the will.

The chancellor adjudicated that the will created a trust fund for the upkeep of the graves and cemetery lot, but left open for future decree what amount should be retained for that purpose. The decree stipulated that after the land has been sold and the expenses of administration paid the interested parties may then petition the court for disposition of the corpus of the estate which will not be needed or required to carry out and completely fulfill the purposes of the trust.

The gist of appellants' argument is that the will is so indefinite and uncertain in its terms that effect can be given to no part thereof except the devise of $25 to Pernicia Colums, and further that no trust is created for improvement and maintenance of the graves and cemetery lot for the reason that no specific directions are given as to just what is to be done. They rely primarily upon a general statement in 69 C.J. and on the case of Smith v. Heyward, 115 S. C. 145, 105 S. E. 275. That case dealt with an attempt to create a private trust for the perpetual upkeep of the house, gardens and grounds constituting the old home place of the testatrix and we do not think it is here in point. Section 1273, Mississippi Code of 1942, expressly authorizes a bequest for the maintenance and preservation of any private or family cemetery or burying ground. ██ █ The lot on which the three graves in question are situated, while in a country churchyard, constitutes, in our opinion, a private burying ground within the meaning of the statute, and, at any rate, we feel that the chancellor correctly adjudicated the meaning and intent of the testatrix as to the improvement and maintenance of this burial lot.

The decree is accordingly affirmed and the cause remanded to the lower court so that its terms may be carried out under its supervision.

Affirmed and remanded.

**McGehee, C. J.**, and **Kyle, Holmes** and **Etheridge, JJ.**, concur.